May it please the Court, my name is Larry Albert, here on behalf of appellants Dennis Stacey and Pelham Jackson in this matter. This is a public lands case that concerns a stone deposit in the Chugach National Forest of Alaska, which my client has located as a mining claim. The general issue presented is whether the stone deposit constitutes a deposit qualifies as a locatable mineral. The government contends the deposit constitutes a common variety of material pursuant to a 1955 amendment to the general mining law. Following introductory points are made. As appellants, my clients have the burden of proof in this case, so we necessarily had to address the district court's decision below. The government's brief instead was devoted to defending the decision of the Interior Board of Land Appeals. As a practical matter, both parties have looked to the I.B.L.A. decision as a substantive authority on appellate review. In this regard, the appellants note this Court's 1999 decision in Hjelvik v. Babbitt, which states the Ninth Circuit sits as if it were the district court in appellate review of an I.B.L.A. decision. So, and I'm sorry to stop you. So, if I'm sitting as the district court in appellate review of the I.B.L.A. decision, what deference do I owe to their decision? The same deference rules would apply in my understanding. I think the significance is that where it's a second level appeal from an administrative decision, the appellate court can sit as a district court. Well, I understand, but I'm again asking you what deference, because it seems to me that there are two issues here which the deference is pretty important to determine. The first one was whether the government established a prima facie case. If I'm to give deference to the I.B.L.A. in suggesting that the government did establish a prima facie case, then I've got to say you've got to find clear error in what they determined. On matters of fact. Yes. If we're applying the substantial evidence standard, and there's no dispute here that the substantial evidence standard... And the same would be then on whether they erred in finding that Stacy failed to show that the building stone was an uncommon variety. As to fact, I would have to find that you would have to say they had the I.B.L.A. committed plain error. On matters of fact. Our principal argument, however, is that this appeal can be decided on matters of law. We had briefed that extensively below, and that's been briefed in our opening and reply brief to this court. But I agree that the standard of review doesn't change when this court sits as if it were the district court. The same standards of review are going to apply under the A.P.A., both on fact finding and legal standards. So what law is there to suggest that what the I.B.L.A. found as to the government's establishing their prima facie case was error? What legal theory do you have? In my book, there is no legal theory other than me trying to see, based on United States versus multiple use, I have to determine whether the government established a prima facie case. And the first is their prima facie case, I've got to determine whether Spencer Stone is, number one, a stone. Number two, had a valuable comparable to other stones. And number three, had no use that commanded a higher price. And I've got to find whether the government had a prima facie case. And I found, based on what's in this evidence, or this record, I cannot suggest that the I.B.L.A. erred that the government established their prima facie case. We respectfully disagree, Your Honor. I know. So what legal theory is there? The legal theory is that there's multiple sources of authority. First, there's the multiple use decision itself, wherein the I.B.L.A. gave guidance that, and I'm just talking about the prima facie case now. In the prima facie case, multiple use gave guidance that if you have a contest concerning building stone, the comparison should be to either sand or riprap. And we have distinguished riprap from armor stone. There's extensive discussion and references to the record as to what armor stone is. And I've cited to an illustrative photograph at page 444 of the excerpts, armor stone are huge boulders the size of this lectern. Riprap is small material that I could sit, that I could physically lift up and place on top of the lectern. And that photograph shows both armor stone and riprap. And multiple use clearly stated, and I think both sides recognize, the multiple, the three-part test that is to be applied in the prima facie case derives from multiple use. And multiple use gave guidance on a matter of law that you should compare the contested stone deposit to riprap. That was not done by the government. Instead, the government compared armor stone to armor stone. That's the one source of authority. The second source of authority is pitkin iron, which we have briefed. It was not a stone contest case, but it stands for the proposition as a matter of law that the government has a burden in a prima facie case. The government must compare the contested deposit to other materials that lack the properties presented or demonstrated with a contested deposit. That was not done in pitkin iron. It was chemical grade limestone. The IBLA compared, excuse me, the IBLA accepted the government's offer of a comparison of chemical grade limestone to limestone. And pitkin iron, the district court said, no, that was wrong as a matter of law. And therefore, the prima facie case should have been dismissed. That's exactly our argument in this case. We realize that pitkin iron is not presidential authority. It's only a district court decision in the District of Colorado, but we think it's on point. And we think it's persuasive as a matter of law. Well, I have a tough time suggesting that a district court case in Colorado is somehow a legal conclusion for which I must suggest the IBLA must follow it. Well, aside from pitkin iron, we've also made... I mean, I hear what you said on the first instance. The government will have a chance to respond there. I'm interested that you put up the Colorado case, because I didn't see that as a law that the IBLA needs to follow at all. That's some district judge's best idea. Well, I recognize it's not presidential authority, but we don't have... there's a paucity of authority dealing specifically with this issue, but I'd like to give... I know we don't. And that's why it didn't seem to me in these particular areas, because we really don't have presidential authority as to this given area. There's another argument, I think, that's important here in responding to your question about standards of review and fact-finding and whether there was clear error. The very first point we made, which the government... there were many arguments we made in our opening brief, which the government ignored and failed to address. And the important one in regard to the prima facie case is that in the three proceedings below, before the ALJ, the IBLA, and finally in the district court, my clients argued that the mineral examiner, who was a chief witness on behalf of the government in the prima facie case, admitted on cross-examination that the deposit comparison should have been armor stone to common variety material to all types of rock and not other armor stone. There was a colloquy on that. We've produced that in the excerpts of record. We've argued that consistently, and the government refuses to even acknowledge that. We consider that to be an admission, a material admission, and we've cited IBLA precedent for the proposition that if the government uses an incorrect legal standard in the prima facie case, that warrants dismissal. And I think Pitkin Iron is consistent with that principle of law. The government also seems to argue that... All right, so the second major point here is that if the government sustained its prima facie case, we then have what's called a rebuttal phase in contest proceedings. And so basically, that same the deposit comparison was correct under the McLarty factors. And we emphasize that McLarty is binding precedent on this court, and that the Interior Department for the last 30 years purports to follow McLarty, and specifically promulgated a rule in 2003 that incorporates the McLarty factors. And we think... Just to be clear, though, those factors are not part of the prima facie case, correct? Well, that's another argument we made, but I'm running Yes. Yes. We think that the McLarty factors are part of the prima facie case. We think that it makes sense that if the multiple, the three-part test that the judge recited for multiple use, that derives from McLarty. Everything derives from McLarty. So we think the McLarty factors properly apply to the prima facie case. It doesn't make any sense for the government to have promulgated a rule that incorporates McLarty and says, well, we look to McLarty in mineral contest proceedings, but that's only going to apply to the rebuttal phase, and we can disregard McLarty to the prima facie case. I just don't think that's... But there is no case that says that, right? Your argument you're just making is a good argument for your side, one you want to make. But the bottom line is, there's nothing that suggests that's part of the prima facie case. No case. I agree. I mean, if you look at multiple use, you can't find that. There's no authority either way. There's no authority either from the I.B.L.A. or from the court, district courts, saying that the McLarty factors do affirmatively apply to the prima facie case, and there's no authority that says... But there is authority in multiple use as to what I suggested are the, if you will, the government's burden on a prima facie case are those three things. Yes, and we agree with that. And we don't have any other case that tells us what the factors are for prima facie case, correct? Besides Pitkin-Iron as a... But with respect to this, the multiple use is the controlling case, correct? I'd like to proceed with the rebuttal phase because I think that's also important where we... Well, but you might answer a question. Yeah, but if you want to waive the argument, that's fine. I'm just, you know, it's one that you made, and that's why I asked you if you were still resting on it. Yes, yes. You said yes, and my question was, is there's... Multiple use sets out the factors, but to adopt your argument, I'm looking for something else that would say either there's more factors or different factors or nuanced factors. We simply recognize that multiple use sets out a three-part test. That test was not applied in proceedings below. Also, multiple use specifically stated, and I repeat, they provided guidance that in building stone contest, the comparison should be to sand or riprap. That was not done here. And we think that Pitkin-Iron is, although it's a district court decision, Pitkin-Iron applied the multiple uses three-part test. It did not expressly apply the majority factors, but it applied the multiple use three-part test and said that the government did not properly apply the three-part test, therefore the contest should have been dismissed on the prima facie case. Let's move to the second issue since you want to move there. The major argument in the rebuttal phase is that the IVLA has been... IVLA decisions over the last 30 years have been arbitrary and capricious as a matter of law in applying the McLarty factor regarding deposit comparison and unique properties. Some of the cases say that recognize what we've characterized as a logical fallacy. You can't compare the contested deposit to materials that are exactly like or similar to the contested deposit because then you collapse into a circular analysis of what would be a unique property versus what's not a unique property. So there's precedent for the proposition that if you establish a unique property with a contested deposit, then the comparison must be to other materials that lack that unique property. Now, there's other cases, which the government cites, that stand for a different proposition in building stone contests that you can compare the contested material with similar materials. But we think those cases are distinguishable because they consistently do not address the issue of a unique property or there's no finding of a unique property. And that's true. What's interesting here is that... I'll just point out you have about a minute and a half for rebuttal, and I didn't know if you wanted to save that time. Yes, thank you. May it please the Court. I'm Mark Haag from the Department of Justice, and with me at council table is Rachel Roberts, who's also from the Department of Justice, and we're representing the Secretary. It's the new Secretary. It is the new Secretary. Our sheet has the old one, but we realize that there's a new one. Yes. IBLA reasonably affirmed the ALJ's determination that Stacey and Jackson's PR-16 claim is common variety stone and thus not locatable under the general mining law of 1872. I guess to dive right in here and the issue of whether McLarty is part of a prima facie case and multiple use versus, all of these standards are going to the same basic fundamental question, which is raised by the statute, which is whether the deposit of such minerals is valuable because the deposit has some property giving it distinct and special value. McLarty is maybe a more or not McLarty. The three multiple use factors get to that question in a very simple and direct way. McLarty is a longer way of answering the same question or of stating the same questions. Well, and in fact, as I understand it, you can correct me if I'm wrong, the prima facie case for multiple use is a fast way to say all we've got here is that the government has put on some case that gets them on past where they need to go and then the burden shifts, right? That's right. So if the government meets their prima facie case, the burden then shifts to Stacey in this case to show by a preponderance of the evidence that there's a distinct and special value which would demand the higher value at the market, right? That's correct. And I guess you've heard his arguments as to why the government did not establish the prima facie case. How would you respond? Well, not surprisingly, we think we did, Your Honor. I understand that, but respond specifically. We showed that the Spencer stone is stone. That's an easy one. We showed that the use of stone as armor is a common variety use and that the prices paid for their stone, the PR 16 stone, are similar to the prices that are paid for other common variety stone that's used for the same use and that there's no evidence of any special property of the PR 16 stone that would justify a higher price. So you take the position that Spencer stone is not in competition, is not comparable to riprap? No, Your Honor. I think what the evidence shows is that the prices paid for Spencer stone as armor were similar or in one instance more for riprap than were paid for the same stone for use as armor. Well, then Spencer stone is not comparable with riprap. It's more valuable than riprap. No, I might have said that backwards. On one of the two contracts for the sale of Spencer stone that Stacy and Jackson put into the record, the price that was paid for riprap was higher than the price that was paid for armor stone. So that's why it wasn't comparable? That is prong three of multiple use, you're saying. Right, right. So armor itself has not been able to establish a higher price. That's right. That's a different way of saying it. Yes, there are so many different ways of getting to this what gives something distinct and special value. And part of the confusion here, in the Casey Bentonite case, the case involving Bentonite clay, you have a subclass of clay that's only usable for a certain specific purpose for making taconite. And that's what the claimant claims makes it special. Ordinary garden variety clay can't fulfill that function. And therefore, to come up with a sensible way of determining whether this is special or not, you compare ordinary clay to clay that can accomplish this special purpose, Bentonite clay. And that's Casey Bentonite. In this case, the use that Stacy and Johnson is claiming makes their stone special is a use that common variety stone also is used for. Granite, basalt, nice, several other minerals are also used as armor stone. So there's nothing, it's being claimed for a common variety use. So whether you compare Stacy and Johnson stone to armor stone or whether you compare it to riprap, the result is the same. There are more than 20 quarries in Alaska that produce common variety stone that's used as riprap and that's also used or suitable for use as armor stone. And Stacy and Johnson has not been able to show that they get a higher price or that they make a higher profit on their stone than the common variety stone from these other quarries. So that, you know, whether you call that step four of the McLarty analysis or the first step of the McLarty analysis, you're getting to the point of the statute. Is this a common variety material or does it have some special quality? And they were not able to demonstrate that it did. The evidence was that the only use for Spencer stone is as armor stone? No. The evidence is that they have sold Spencer stone as armor stone, as riprap, as filter stone. And these are all just basically different sizes of the chunk of rock, filter stones being as small as four pounds. And in one of the contracts that they put into evidence, the riprap, the armor stone, and the filter stone, all the different sizes, were all sold for the same price. So that's not necessarily dispositive, but it certainly undercuts any argument that the Stacy stone, Spencer stone, has special value for its use as armor stone. I would briefly like to also mention Mr. Albert's point about the mineral examiner's supposed concession, Mr. Baer's concession, that the agency used the wrong test. I'm glad you came to that because that was the question I was going to ask. Well, I was afraid you weren't going to ask me. No, we were going to ask that. Frankly, I was just waiting for you to finish. Seems to me he makes a pretty good point. Well, I don't think that it's fair to characterize his testimony as being a concession that the agency used the wrong standard. And if you read the whole piece of the testimony that's included in the experts, it's ER 430 to 436, he goes back and forth and ultimately he says, no, that sentence where the minerals report says armor stone is no more valuable than, or Spencer armor stone is no more valuable than any other armor stone, should have said no more valuable than any other stone. So that's a correction. That's not a concession that the whole theory of the government's comparison is wrong. But more importantly- But more importantly, what he said, how does that affect, I mean, what he's suggesting is that what he says, in fact, sinks your case. That's right. And nothing could be more important than that. Yeah. But the decision that's being reviewed here is the IBLA's decision, not the testimony of one of the government's witnesses. And the IBLA addresses this point. It's a little subtle. My worry is that if his point, if he now goes away from the point you want him to make, is there evidence in the record which would make out the point otherwise? Yes. And the IBLA addresses this at ER 171. This is the top paragraph of the page near the last two sentences. First, the court, the IBLA says, we find no error in Judge Schweitzer's rejecting Appellant's Proffert comparison, comparing their deposit with other armor stone. So the IBLA says armor stone to armor stone is okay here because other common stone is being used for the same purposes. But it goes on and says, moreover and in any event we find the government demonstrated that rock used as armor stone is common variety building stone by showing that many types of stone are usable as armor stone and that a large number of quarries in Alaska produce rock acceptable for use as armor stone. So this gets to where I was trying to start, which is that this dichotomy that the appellants are raising here between a comparison to other armor stone versus a comparison to common variety stone doesn't make any difference in this case because common variety stone can be used and is used as armor stone. So they just are not two distinct categories. I'm interested in you addressing the 2003 rule application. I guess two or three points on that, Your Honor. First, black letter law that agencies, decision makers, apply the law in effect at the time of the decision so the 2003 rule was the rule that was in effect when the ALJ made his decision before the IBLA, before the district court. Stacey and Jackson did not raise the potential applicability of the 1962 rule before the ABLA. They raised it before the ALJ. They raised it for the first time in a petition for rehearing before the IBLA and the IBLA addresses it in its response to the petition for rehearing, which is in the record, in the excerpts. Let me ask you this. The interesting point, which I think rather than arguing whether it was in effect or whether it wasn't or whether it should be applied or whether it wasn't, is the new rule really a new rule or is it merely a codification of the standard that the IBLA had always been using? I think it is that. It's a codification of, it's an attempt to codify the IBLA's prior practice. It's also a codification of this court's decision, which states that it's codifying what the IBLA had decided in an earlier case. I think it's U.S. Minerals Management. So it was the law in effect. Are you arguing then that really the legal standard applied was not any different than what Stacy would want us to apply? Well, I think that they are seeking to rely on the 1962 rule for its language talking that refers to special value based on the location of the deposit as opposed to the intrinsic properties of the deposit. And that's no longer the law because the 1962 rule has been superseded. But even if the 1962 rule hadn't been superseded, that provision wouldn't do them any good because it's limited to minerals that are being used in manufacturing or industrial processes. The language is at page A4 of the appendix. The appendix to Stacy and Johnson's opening brief has the 1962 rule, which says, I'm sorry, it's A6 of the appendix. Mineral materials which occur commonly shall not be deemed to be common varieties if a particular deposit has distinct and special properties making it commercially valuable for use in a manufacturing, industrial, or processing operation. So that's not this case. It wouldn't have gotten them anywhere even if it were. So your position really is that it doesn't matter in the end. Right. If there are no further questions. Thank you. Thank you. Mr. Albert, you had a little bit of rebuttal time if you wanted to. Thank you. Some questions were asked in regard to price comparison and determining distinct and special value, I think. The answers were given both with regard to the prima facie case and the rebuttal case. I'm just going to quickly direct the court to the record. We disagree that there was a showing of that dispenser stone, which is what we call this, did not compare favorably with riprap. The record does not show that. It's in the briefing, specifically page 21 of the reply brief. The only evidence that the government offered, and it was in the mineral examiner's report on price comparison, was to royalty value. And he didn't compare to riprap. He compared to royalty that the poor service had valued for the deposit, which was common variety material itself. They didn't even appraise the armor stone component. They compared it to two other quarries that we characterize as uncommon varieties, and it's back to this issue of armor stone versus armor stone or armor stone to common varieties. I'm just segueing into at some point it's a labeling problem here, and it can be very confusing, you know, what is armor stone versus what is uncommon variety. And our essential argument is that the IBLA decisions are confusing on this, and they do not use a consistent standard to avoid this logical fallacy to establish what is a unique property. If you establish a unique property for the deposit, the comparison has to be to something else that lacks that unique property. The IBLA assumed in this case that this deposit possessed a unique property of producing what they call large armor stone, two tons or higher. The government comparison, the only data that the mineral examiner offered was to a similar quarry in Cape Nome, so it was armor stone to armor stone. We think that's wrong as a matter of law, or it reflects arbitrary and capricious decision making in the precedent that the IBLA has used. Now, in the rebuttal phase regarding the information that was presented on price comparison, none of the government witnesses testified. They offered no testimony in the rebuttal phase of the proceeding on distinct and special value on price comparison. It was basically two Corps of Engineers witnesses, and they got into Hudson's formula and specifications of rock and core and this and that, but they didn't talk about market comparison. They didn't talk about distinct and special value. It was the IBLA itself. We contend the IBLA fabricated a market comparison, and the market comparison was based on my client's own contract bids on two projects. There was no offer of evidence to any other rock, whether it was armor stone or common or whatever you want to call it, from any other producing source. And that in itself we contend is arbitrary and capricious decision making because board decision consistently state, including McLarty itself, that when you're doing a market comparison, you go out in the marketplace and you look at other sources of supply and you look at the prices. That was never done here. The government failed its burden in the rebuttal. Thank you. We appreciate the arguments from both counsel. The case just argued of Stacy versus, I guess I should have gone back to the news. Zinke is submitted. And we thank you both coming all the way from Alaska and also Washington, D.C. And we're now adjourned for the morning. Thank you.
judges: McKeown, Bea, N.R. Smith